(Not for Publication) (Docket Entry Nos. 1, 18)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
ERNESTINE DIGGS,                    :
                                    :
                  Plaintiff,        :     Civil No. 07-5769 (RBK)
                                    :
          v.                        :     **OPINION**
                                    :
MICHAEL J. ASTRUE,                  :
COMMISSIONER OF SOCIAL              :
SECURITY,                           :
                                    :
                  Defendant.        :
_____ :

**KUGLER**, United States District Judge:

Pursuant to Title 42 U.S.C. § 405(g), Plaintiff Ernestine Diggs ("Plaintiff") brought the instant action seeking review of the decision of Defendant Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner has moved to reverse his final decision and remand for further consideration at the administrative level. Because the Court finds that the Administrative Law Judge failed to consider Plaintiff's most recent medical records and relied exclusively on the medical-vocational guidelines in assessing the effect of Plaintiff's non-exertional limitations, the Court will grant the Commissioner's motion for remand. Plaintiff's complaint will be dismissed.

**I. BACKGROUND**

    **A. Factual Background**

Plaintiff was born on January 21, 1964. (R. at 338.) She has a B.S. in computer science. (R. at 339.) She has worked as a senior programmer analyst, among other jobs. (R. at 346-48.)

The medical record in Plaintiff's administrative file dates back to 1994. It includes records of the following medical conditions from before the onset date of Plaintiff's disability: (1) in 1994 and 1995, Plaintiff underwent surgery for endometriosis (R. at 152-62) and Plaintiff saw Dr. Alan Manus, who had performed the operations, from 1994 through 2000 (R. at 180-84); (2) in November 1998, Plaintiff fractured her right lateral tibial plateau (R. at 163-67)[1]; (3) in January 2001, Plaintiff went to the Underwood Memorial Hospital emergency room, complaining of a headache (R. at 186-203); and (4) in June 2001, Plaintiff sprained both of her ankles (R. at 214-219).

Plaintiff alleges that she is disabled with an onset date of December 6, 2002. Plaintiff suffers from osteoarthritis, chronic lumbago (lower back pain), and morbid obesity. On December 6, 2002, Plaintiff fell into a drainage ditch and injured the left side of her body. (R. at 340-42.) Plaintiff went to the emergency room at Underwood Memorial Hospital, where she reported having pain in her left arm, knee and hip, and on the left side of her neck. (R. at 226.) An x-ray of Plaintiff's shoulder was taken, and revealed no fracture, dislocation or other significant injury. (R. at 227.) Plaintiff did not work after this incident until October 2004. (R.

---

[1] Dr. Todd Lipschultz evaluated Plaintiff several times after this injury. (R. at 168-79.) Four months after this injury, he found that she was "doing extremely well" and was able to "do all functional activities." (R. at 169.)

at 342, 65-67.)[2]

Later in December, 2002, Plaintiff hurt her neck, shoulder, and back during an interaction with the evangelist at her church. (R. at 354.) Plaintiff claims she was injured again in September 2004, when she was rammed while playing basketball. (Complaint at 3; R. at 121.) Plaintiff began working as a part-time case manager in October 2004, but left this job after less than one month. (R. at 66.) Plaintiff claims that she was injured when a supervisor at this job hugged her. (Complaint at 3; R. at 121.) Plaintiff's next job was as a part-time data entry processor from November through December 2004. (R at 66.) Plaintiff claims she was injured again when she fell at this job. (Complaint at 3; R. at 121.)

In July, 2005, Plaintiff saw Dr. Nithyashuba Khona, whose report indicated that Plaintiff complained of lower back pain but was unable to describe the pain. Dr. Khona concluded that "[t]here were no positive physical findings during this examination except the claimant's objective complaints of pain." (R. at 234.) In her report, Dr. Khona noted that Plaintiff was able to walk on her toes and heels; squat halfway; change her clothes and get on and off the examination table without assistance; and rise from a chair without difficulty. Further, Dr. Khona noted that Plaintiff's hand and finger dexterity were intact, and that Plaintiff had a full range of motion at her shoulders, elbows, forearms, wrists, and fingers, as well as at her hips, knees and ankles. Dr. Khona's report also noted that Plaintiff did not suffer from joint inflammation or effusion, muscle atrophy, or sensory abnormality. Dr. Khona also found that Plaintiff's reflexes were normal. Dr. Khona recommended that Plaintiff undergo a psychiatric

---

[2] Plaintiff had been fired from her job in October 2001 and had not worked from that time until the time of her fall. (R. at 342.)

3

evaluation. (R. at 232-34.) Plaintiff claims that Dr. Khona injured her during this examination. (Pl.'s Br. at 3.)

On August 9, 2005, psychologist Robert J. Waters, Ph.D. prepared a report for the New Jersey Division of Disability Determination Services. This report indicated that Plaintiff said her pain was episodic, rather than chronic. It also indicated that Plaintiff said she was able to wash dishes, shower, groom and feed herself, shop independently, and drive. The report also stated that Plaintiff was able to follow simple and multi-step instructions; that "her gait and posture were unremarkable;" that "[h]er speech was coherent, goal directed, relevant and logical;" that her appetite was normal; and that her attention was excellent. Dr. Waters noted that Plaintiff's recent memory was impaired. He concluded that Plaintiff's "moderate to severe limitations are due mainly to her physical status," not her mental status. (R. at 239-242.)

On August 10, 2005, Dr. David Schneider, a consultant for the New Jersey Division of Disability Determinations, performed a physical residual functional capacity assessment, which relied on Dr. Khona's report. In this assessment, Dr. Schneider concluded that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. He also found that Plaintiff was able to stand and/or walk for about 6 hours in an 8-hour workday and sit for the same time period. He also found that Plaintiff's ability to push and/or pull was unlimited. He found no postural, manipulative, visual, communicative or environmental limitations. He noted that Plaintiff suffered from osteoarthritis and morbid obesity, but was able to drive, shop and perform some household chores. He stated that "[t]he severity and duration of [Plaintiff's] symptoms are not proportionate to the expected." (R. at 243–50.) Another state agency physician agreed with Dr. Schneider's assessment. (R. at 250.)

Plaintiff saw Dr. Francis V. Grandizio Jr. on July 31, 2006.  Dr. Grandizio noted that upon performance of the cervical range of motion studies, Plaintiff had decreased range of motion in all directions, with pain upon flexion, extension and rotation.  Dr. Grandizio also noted that upon performance of the lumbar range of motion studies, Plaintiff had decreased range of motion in all directions with pain.  There was also some indication of a disc problem.  Dr. Grandizio noted, however, that there were no abnormalities with respect to cervical orthopedic neurologic studies.  (R. at 269-70.)

In August and December of 2006, Plaintiff saw Dr. Barry K. Butler.  (R. at 353.)  In August, Dr. Butler ordered an x-ray of Plaintiff's shoulders, which did not show any osseous injury.  (R. at 275.)  Dr. Butler also ordered an MRI of Plaintiff's back, which revealed a "small posterior annular tear, without any evidence of canal or foraminal stenosis," " a concentric annular bulge . . . with a far left lateral tear without canal stenosis" and "mild facet arthropathy."  (R. at 273.)  Plaintiff had a physical therapy evaluation on September 5, 2006, which indicated that she had "impaired posture, strength, flexibility, endurance and chronic pain due to degenerative joint and disc disease."  (R. at 280.)

Plaintiff saw Dr. Lee Hopkins twice, most recently in November 2006.  (R. at 352.)  Dr. Hopkins ordered a whole body scan of Plaintiff.  The scan indicated that Plaintiff suffered from degenerative joint disease in her shoulders, sternoclavicular joints, hips, knees, and ankles, as well as diffuse degenerative joint changes in her spine.  (R. at 291.)

Plaintiff claims that sometime between August 2006 and October 2007, she fell on her right side. (Complaint at 4.)

### B. Procedural Background

Plaintiff filed applications for DIB and SSI on April 30, 2005. Her applications were denied initially on August 26, 2005, and upon reconsideration on December 13, 2006. Plaintiff then filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). After the hearing, where Plaintiff appeared pro se, the ALJ issued a decision on April 27, 2007 denying Plaintiff's claims. (R. at 12-23.) On November 19, 2007, the Appeals Council denied Plaintiff's request for review. (R. at 5-7.) On December 4, 2007, Plaintiff filed a complaint in this Court seeking review of the ALJ's decision. On February 21, 2008, the Commissioner filed an answer seeking dismissal of Plaintiff's complaint and stating that his findings were "supported by substantial evidence and conclusive." Eight months later, the Commissioner filed the motion to remand currently before this Court. On December 5, 2008, this Court heard oral arguments on the Commissioner's motion to remand. Plaintiff would not stipulate to remand of this case.

## II. STANDARD

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the Commissioner "ignores, or fails to resolve, a conflict created by

countervailing evidence." Wallace v. Sec'y of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir.1983)).

If the Commissioner's decision is not supported by substantial evidence, a court may remand the case pursuant to the fourth sentence of 42 U.S.C. § 405(g). See Sullivan v. Finkelstein, 496 U.S. 617, 625-26 (1990). The fourth sentence of 42 U.S.C. § 405(g) provides: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

A court will reverse the ALJ's decision and order an award of benefits only if "the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984).

### III. DISABILITY DETERMINATION PROCESS

In order to qualify for SSI benefits, a claimant must establish that she is aged, blind or disabled. 42 U.S.C. § 1381a (2006). To qualify for DBI benefits, a claimant must establish that she is disabled. 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Her impairment(s) must prevent her not only from doing her previous work, but also from "engag[ing] in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). In the first step, the Commissioner evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a)(i). In step two, the Commissioner ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner proceeds to step three, and determines whether the condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's residual functional capacity ("RFC") and analyze whether the RFC would enable the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503.

In this case, the ALJ, applying the five-step process, found that Plaintiff was not disabled for purposes of the Social Security Act. The ALJ's findings included the following: (1) Plaintiff had not engaged in substantial gainful activity since December 6, 2002, the alleged onset date of her disability; (2) Plaintiff suffers from the following severe combination of impairments: osteoarthritis, chronic low back pain syndrome, and morbid obesity; (3) Plaintiff's impairments

8

do not meet or equal a listed impairment; (4) Plaintiff is unable to perform any past relevant work; and (5) given Plaintiff's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy that Plaintiff can perform. (R. at 17-22.)

The ALJ determined that Plaintiff's impairments could cause the symptoms of which she complained, but also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." The ALJ reasoned that Plaintiff's testimony was "vague, overly dramatic and exaggerated," in light of the objective medical evidence and Plaintiff's daily activities. (R. at 21.) The ALJ cited Dr. Lipschultz's 1999 report which stated that Plaintiff was able to "do all functional activities" (R. at 21, 169) and Dr. Khona's 2005 report (R. at 21, 232-37). The ALJ stated that Dr. Butler reported that muscle strength of the lower extremities was 5/5 and deep tendon reflexes were 2+ and equal. The ALJ also noted the results of the MRI of Plaintiff's back and the x-ray of her shoulders. The ALJ noted the lack of evidence of muscle weakness, atrophy, reflex depression or sensory loss and the lack of evidence that any doctor advised Plaintiff to limit her lifting, carrying, walking, sitting or standing, or advised her not to work. (R. at 21.) Finally, the ALJ noted that Plaintiff was able to work in October and December 2004 and that she was able to play basketball in September 2004. (R. at 21-22.)

### III. PLAINTIFF'S ARGUMENTS

Plaintiff seeks reversal and/or remand of the ALJ's decision. Plaintiff claims that the ALJ's decision was based on a false and incomplete record. Specifically, she argues that (1) the ALJ should not have relied on Dr. Khona's report and should instead have ordered a new

consultative examination; (2) the ALJ should not have relied on Dr. Schneider's residual functional capacity assessment; (3) the ALJ should have further developed the record; (4) the ALJ should have considered additional medical evidence; (5) the ALJ erroneously found that Plaintiff was not credible; (6) the ALJ should not have considered certain medical reports because they were false, misleading or inappropriate; (7) the ALJ should have considered Plaintiff's complaints against Dr. Khona; and (8) the hearing transcript contained inaccuracies.

The Court finds that because the ALJ reviewed only medical records pre-dating December 2006, despite the fact that Plaintiff testified that she saw Dr. Butler in December 2006, remand is appropriate. The Court finds Plaintiff's other arguments to be without merit.

**A.  Dr. Khona's Report**

First, Plaintiff argues that Dr. Khona injured Plaintiff during her consultative examination and then lied in her report. Specifically, Plaintiff claims that Dr. Khona lied when she said that Plaintiff was unable to say where her pain was or describe the pain and that there were no trigger points. Plaintiff also claims that contrary to Dr. Khona's report, she did suffer from joint inflammation. Plaintiff argues that the ALJ should not have relied on Dr. Khona's report, and that a new consultative examination should have been ordered.

Plaintiff's allegations that Dr. Khona injured her are not relevant to the determination of whether there was substantial evidence to support the ALJ's finding as to Plaintiff's disability. Plaintiff's allegation that Dr. Khona lied in her report is beyond the scope of this Court's review. This Court cannot reweigh the evidence. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B.  Dr. Schneider's Residual Functional Capacity Assessment

Second, Plaintiff argues that the ALJ should not have relied on Dr. Schneider's residual functional capacity assessment, and that a new assessment should have been ordered.  Plaintiff states that Dr. Schneider's assessment relied on Dr. Khona's allegedly false report, did not contain notes from Plaintiff's treating physicians (Dr. Barry K. Butler, Dr. Leigh H. Hopkins, Dr. S. Sutton Hamilton, and Dr. Mark Grzeskowiak), and did not take into account Plaintiff's workplace injury in December 2004.

The Court notes that in making the residual functional capacity finding in this case, the ALJ relied on other sources in addition to Dr. Schneider's report: Dr. Lipschultz's report, Dr. Khona's report, and Dr. Butler's report.  It is not clear when and under what circumstances Plaintiff saw Dr. Hamilton and Dr. Grzeskowiak.  There does not seem to be any information from or about these doctors in the record or the materials submitted by Plaintiff.   However, as stated previously, the ALJ failed to consider the December 2006 medical evidence, which Plaintiff brought to the ALJ's attention, and therefore remand is appropriate.

### C.  Failure to Fully Develop the Record

Third, Plaintiff argues that the ALJ failed to fully develop the record, rely on all information available, and order additional tests, records, or documentation.  Plaintiff fails to specify, however, what tests, records or documentation the ALJ should have requested.  Plaintiff states that the ALJ failed to explain the five-step process used by the Social Security Administration to determine whether a person is disabled.  Plaintiff does not cite any authority that requires an ALJ to explain the five-step process to a claimant during the hearing.  Furthermore, the notice of hearing sent to Plaintiff explained the ALJ's decisionmaking process.

11

(R. at 48-49.) While this explanation does not explain fully the five-step process, it refers to the portions of the Code of Federal Regulations that do. (R. at 49.)

Plaintiff also states that the ALJ did not present her with the full file at the hearing. According to Plaintiff, the ALJ also did not review evidence from the file during the hearing, thereby depriving Plaintiff of the opportunity to testify about that evidence. Plaintiff's testimony at the administrative hearing contradicts her claim that the ALJ did not give her the opportunity to refute reports contained in her file. Plaintiff testified at the hearing that she had reviewed the file and that while "all of it is not 100 per cent accurate," she did not want "to go over every report," and she would not object to the file being entered into the record. (R. at 336.) Further, at the end of the hearing, the ALJ asked Plaintiff if there was anything in particular she wanted him to consider in making his decision; Plaintiff did not take this opportunity to refute the findings of records in the file. (R. at 360-61.)

### D. Failure to Consider Medical Evidence

Fourth, Plaintiff believes that more of her medical history should have been considered. Plaintiff claims that Dr. Gregory Maslow performed arthroscopic surgery on her knee in 1982, but there are no records from Dr. Maslow in the file. Further, Plaintiff contends that Dr. Lori L. Lewis performed foot surgery on Plaintiff in 2001 and 2002, and failed to respond to a request for records. Plaintiff contends that Dr. Lewis failed to provide x-rays. Plaintiff notes that while Dr. Hopkins found the x-rays were "no good," he was still able to make a clinical diagnosis based on them.

Plaintiff appears to believe that some medical records in the administrative record were not adequately considered. Plaintiff had several operations in 1994 and 1995, including a

hysterectomy, because she suffered from endometriosis. (R. at 152-62.) In 1994, Dr. Alan Manus prescribed Zoladex, a hormone therapy, for Plaintiff. (R. at 184.) Plaintiff refers to AstraZenica's website, which states that Zoladex can cause decreased bone density. Plaintiff claims that patients should have a bone density test before and after taking Zoladex, and that she has never had a bone density test. Plaintiff does not provide any support for this argument.

An ALJ must consider all relevant medical evidence, and must explain why relevant evidence has been rejected. Cotter v. Harris, 642 F.2d 700, 705-07 (3d Cir. 1981). It is not clear however, how the evidence of Plaintiff's treatment for endometriosis is related to her claimed disability. Plaintiff claims that medication she took could have caused her to lose bone density, but there is no evidence to support this assertion.

The ALJ has a duty to develop the record, and "must secure relevant information regarding a claimant's entitlement to social security benefits." Ventura, 55 F.3d at 902 (3d Cir. 1995). Here, however, Plaintiff does not explain why the ALJ should have known to request records from Dr. Maslow and Dr. Lewis.

### E. ALJ's Findings Regarding Plaintiff's Credibility

Fifth, Plaintiff contests the ALJ's statement that her testimony was not credible. In his opinion, the ALJ stated that "[a]fter considering the evidence of record, the undersigned finds that . . .the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." Further, the ALJ stated that "the functional limitations alleged by the claimant did not seem credible because the claimant's testimony seemed somewhat vague, overly dramatic and exaggerated considering the objective medical findings and was inconsistent with the much higher level of daily activities indicated in the record." (R. at

13

21.)

Generally, the ALJ must give "serious consideration" to a claimant's description of her pain. Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983) (quoting Smith v. Califano, 637 F.2d 968, 972 (3d Cir.1981)). However, "the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Id. (quoting Bolton v. Sec'y of Health and Human Servs., 504 F. Supp. 288 (E.D.N.Y.1980)). In evaluating a claimant's credibility, the ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the individual's pain or other symptoms." S.S.R. 96-7p. Then the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. In making this evaluation, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Id.

Here, the ALJ applied step one and found that there were underlying impairments. In step two, he then considered the evidence that Plaintiff was able to play basketball as late as 2004, almost two years after the alleged onset date of her disability. Furthermore, the ALJ cited reports by several doctors, which indicated that Plaintiff was able to perform a number of tasks. Therefore the Court finds that there were sufficient facts to support the ALJ's credibility

determination.

### F. Inappropriate, False or Misleading Information in Doctors' Reports

Sixth, Plaintiff claims that doctor notes in the file are "inappropriate, false and (or) misleading and violate [her] right to privacy and human decency." (Pl.'s Br. at 7.) Plaintiff takes issue with the following records: (1) Dr. Khona's report (for the reasons already discussed); (2) Dr. Schneider's assessment (for the reasons already discussed); (3) records from Dr. Manus's office (which, according to Plaintiff, falsely stated that Plaintiff experienced bleeding after intercourse); (4) Dr. Robert J. Waters' report (which, according to Plaintiff, falsely stated that Plaintiff said someone had pulled her hair in church and that Plaintiff's pain was episodic, rather than chronic); and (5) Dr. Todd Lipschultz's report (which, according to Plaintiff, the ALJ inaccurately cited by failing to note that the report stated that the doctor prescribed a knee brace for Plaintiff).

Plaintiff's accusations about Dr. Manus are irrelevant to the determination of whether the ALJ's decision was supported by substantial evidence. Further, this Court's review does not extend to evaluating the credibility of medical reports.

### G. Missing Records Concerning Complaints about Dr. Khona

Seventh, Plaintiff states that the administrative record does not include information regarding the complaints she filed against Dr. Khona with the Voorhees Police Department and with the New Jersey Department of Disability Determinations. Plaintiff does not explain how this information would help the ALJ determine whether or not Plaintiff was disabled.

**H. Inaccuracies in Hearing Transcript**

Eighth, Plaintiff states that the transcript of the hearing before the ALJ contains inaccuracies, but Plaintiff is unable to identify each specific inaccuracy because of her memory problems. The only two inaccuracies Plaintiff identifies are that: (1) the ALJ said that he knew two lawyers who would take her case, not that he knew two law firms that would; and (2) the ALJ offered to help Plaintiff with another case before another ALJ.

Because Plaintiff is unable to identify all of the inaccuracies in the transcript, it is impossible to evaluate their significance. The two inaccuracies Plaintiff mentions are irrelevant to this Court's task of determining whether there was sufficient evidence to support the ALJ's finding that Plaintiff was not disabled.

**IV. COMMISSIONER'S ARGUMENTS**

The Commissioner, like the Plaintiff, argues that the ALJ's decision was not supported by substantial evidence. The Commissioner argues that remanding this case for further administrative proceedings is appropriate because the ALJ (1) failed to evaluate the impact of Plaintiff's obesity on her functioning; (2) considered only records pre-dating December 2006, despite the fact that Plaintiff testified that she saw Dr. Butler in December 2006; and (3) did not obtain vocational expert testimony. The Court finds that remand is appropriate for the second and third reasons articulated by the Commissioner.

**A. Impact of Obesity on Functioning**

Obesity is a "medically determinable impairment" and ALJs must "consider its effects when evaluating disability." SSR 02-1p. Obesity can increase the negative impact of other impairments, including osteoarthritis. Id. Obesity is considered in steps two through five of the

16

ALJ's process (whether the claimant has a severe impairment; whether the impairment meets or equals a listed impairment; whether the impairment prevents the claimant from performing past relevant work; and whether the impairment prevents the claimant from performing other work in the national economy). Id. Some courts have remanded cases where the ALJ failed to properly consider the effect of obesity on a plaintiff's overall condition. See Celaya v. Halter, 332 F.3d 1177, 1182-83 (9th Cir. 2003); Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000).

However, an ALJ need not explicitly mention obesity in his ruling if he relies on the reports of doctors who were aware of a claimant's obesity. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (finding ALJ indirectly considered obesity by adopting findings of doctors who were aware of claimant's obesity); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (same). Furthermore, where an ALJ finds that a claimant is obese and there is no indication that he disregarded that finding in making his disability determination, there is no need for remand. See Sienkiewicz v. Barnhart, 409 F.3d 798, 802-03 (7th Cir. 2005).

Here, it appears that the ALJ did consider Plaintiff's obesity. He found that one of her impairments was morbid obesity. (R. at 18.) There is no indication that he ignored her obesity in reaching his conclusions. For example, in determining her residual functional capacity, the ALJ relied on the report of Dr. Schneider, which noted that Plaintiff was morbidly obese.

### B. Failure to Consider Records from December 2006

The ALJ has a heightened duty to develop the record where, as here, the claimant is unrepresented. See Early v. Heckler, 743 F.2d 1002, 1008 (3d Cir. 1984). This duty may include requesting additional medical records, when it is clear that such records would assist in the ALJ's disability determination. See Smith v. Apfel, 231 F.3d 433, 437-38 (7th Cir. 2000) (finding ALJ

17

should have ordered more recent x-rays).

Here, Plaintiff testified that she saw Dr. Butler in December 2006, but the ALJ did not seek records relating to this visit. The reports from Dr. Butler in the record all predated December 2006. As previously discussed, this Court finds that the ALJ's failure to seek and consider recent medical records requires remand.

### C. Reliance on Guidelines/ Lack of Vocational Expert Testimony

In Sykes v. Apfel, the Third Circuit Court of Appeals held that "the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion)." 228 F.3d 259, 261 (3d Cir. 2000).

Here, the ALJ stated that "[t]he claimant's occupational base of wide range of jobs in the light exertional category is not significantly eroded by non-exertional limitations . . . ." (R. at 22.) In reaching this conclusion, the ALJ relied solely on the medical-vocational guidelines, and did not notify Plaintiff of his intention to take official notice of this fact. Therefore, the ALJ's failure to comply with Sykes is an additional basis for remand of this case.

### V. CONCLUSION

For the reasons discussed above, the Commissioner's motion for remand is granted. The final decision of the Commissioner is hereby reversed, and this matter is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings. Plaintiff's complaint is dismissed. An accompanying order will issue today.

Dated: 12-15-08                                          /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge